Robinson RODRIGUEZ Petitioner,

v.

Charles GREINER, Respondent.

No. 02–CV–2858 (NG).

United States District Court,
E.D. New York.

July 29, 2003.

Freddy Kaplam, Brooklyn, NY, for Petitioner.

Charles J. Hunes, Brooklyn, NY, for Respondent.

### *MEMORANDUM & ORDER*

GERSHON, District Judge.

Petitioner, Robinson Rodriguez, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted after a jury trial in New York State Supreme Court, Kings County (Greenberg, J.), of sodomy in the first degree pursuant to N.Y. Penal Law § 130.50[3], and was sentenced on October 5, 1998 to a term of ten to twenty years. Petitioner's crime consisted of anal intercourse with his six-year-old autistic stepson. On direct appeal, petitioner argued that there was insufficient evidence to establish his guilt because the victim's unsworn testimony was corroborated only by vague medical evidence, that the prosecution failed to prove guilt beyond a reason-

able doubt, and that the conviction was against the weight of the evidence. On March 12, 2001, the Appellate Division, Second Department, affirmed petitioner's conviction, finding that "the unsworn testimony of the victim was sufficiently corroborated by the testimony of the victim's mother regarding the victim's statements after he was sexually abused by the defendant, the medical testimony concerning the physical evidence of the abuse, and the defendant's own statements to the police." *People v. Rodriguez,* 281 A.D.2d 498, 721 N.Y.S.2d 562 (2d Dept.2001), *lv. denied,* 96 N.Y.2d 834, 729 N.Y.S.2d 455, 754 N.E.2d 215 (2001). The Appellate Division further concluded that petitioner's guilt was established beyond a reasonable doubt and that the verdict was not against the weight of the evidence.

Petitioner now brings this petition alleging that his due process rights were violated because his conviction was not based upon legally sufficient evidence. The petition was filed within the period of limitations set forth in 28 U.S.C. § 2254(d)(1), and petitioner's claim has been exhausted.

### Facts

Taken in the light most favorable to the prosecution, the evidence at trial was as follows. On July 30, 1997, petitioner spent the day with Vincent Barrios, the son of his former wife, a six-year-old autistic child. Vincent's mother, Eileen Torres, and petitioner had been separated since 1995, but remained friendly and petitioner sometimes watched Ms. Torres' children (one of which, Sean, was also his biological child). Vincent's mother and grandmother testified that, during dinner on July 30th, after returning from his step-father's apartment, Vincent told them that petitioner was a "bad boy" and had put "it" in his mouth and "butt." Ms. Torres thereafter took her son to the police station, where she reported the incident. She then took Vincent to Lutheran Hospital where he

was examined externally, but no internal examination was performed. The family was told that no social worker was available to properly examine Vincent and it was suggested that he be checked in overnight. Ms. Torres, however, decided not to let her son stay in the hospital that night and took him back home.

At trial, Vincent was determined by the court to be competent to testify, but was not permitted to take the oath. Although the victim's testimony was often unresponsive, he testified repeatedly that petitioner put his "winky" or "pito" in Vincent's mouth and "butt." An expert in clinical psychology, Dr. Elizabeth Roness, Ph. D., later testified that Vincent's erratic behavior on the stand was consistent with that exhibited by autistic children. She also testified that autistic children were less likely, in general, to make up stories.

The prosecution offered several witnesses to corroborate Vincent's testimony. Dr. Ramirez–Hojohn, M.D., a board-certified pediatrician specializing in the examination of sexually abused children, who examined Vincent in September 1997 at the Crown Heights Child Specialty Clinic, which is designed specifically to examine and treat children who are suspected of having been sexually abused, testified that she found discoloration around Vincent's anus. Dr. Ramirez–HoJohn testified that such discoloration could have been caused by penile penetration. However, it could also have been caused by several other factors, including diaper rash or diarrhea. She also found evidence of "funneling," which is a pushing-in of the anus which is caused by the insertion of a penis or another blunt object. Dr. Ramirez–Hojohn further testified that in her experience funneling had never been caused by anything other than penile penetration.

The prosecution also offered prompt outcry evidence consisting of the testimony of Ms. Torres and others present at the dinner table when Vincent first told the family that petitioner had sodomized him. The witnesses said that Vincent called petitioner a "bad boy" and said that petitioner told him to "suck it." Petitioner's roommate and family friend, Jose Antonio Roman, testified that he saw Vincent and his brother lying naked on the bed of petitioner's apartment on July 30th, 1997. Mr. Roman acknowledged, however, that it was a hot day, and the bathtub was still filled with water and bath toys when he came home.

Finally, Detective Anthony Demaria, who arrested petitioner, testified that, when he came to get petitioner, petitioner said that he had been waiting for him for three months. The detective further testified that petitioner waived his rights and talked with the detective for over three hours, during which time he admitted to feeling pain and guilt and claimed to have been sexually abused as a child. At one point towards the end of the interview, petitioner asked "how much time am I facing because of this?" The detective testified, however, that petitioner never admitted to actually having intercourse with Vincent and chose to end the interview after a short conference with a family member.

## Sufficiency of Evidence

Petitioner claims that his guilt was not proven beyond a reasonable doubt because the verdict was based on unsworn testimony that was not sufficiently corroborated and because the evidence at trial was, in any event, not sufficient to prove his guilt beyond a reasonable doubt. A petitioner challenging the sufficiency of the evidence of his guilt in a habeas corpus proceeding "bears a very heavy burden." *Fama v. Commissioner of Correctional Services*, 235 F.3d 804, 813 (2d Cir.2000). Habeas corpus relief is to be denied if, "after reviewing the evidence in the light most favorable to the prosecution, any rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). A federal court is not a forum for redetermination of the outcome of a state criminal trial. *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir.1999), *cert. denied*, 528 U.S. 1170, 120 S.Ct. 1196, 145 L.Ed.2d 1100 (2000); *Maldonado v. Scully*, 86 F.3d 32, 35 ("assessments of the weight of the evidence ... are for the jury and not grounds for" overturning a conviction).

■ Moreover, "[i]t is not the province of a federal habeas court to reexamine state-court determination on state-law questions." *Estelle v. McGuire* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *see also Lewis v. Jeffers* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990). Whether the properly admitted unsworn testimony of the victim was sufficiently corroborated in accordance with the requirements of New York C.P.L. 60.20(3) is a matter left to the state courts. A federal court may interfere only if it finds that the state court's ruling violated a federal constitutional right.

■ Vincent's unsworn testimony was sufficiently corroborated by the medical evidence and the testimony of other witnesses at trial that no federal due process violation occurred. Under New York law, evidence that corroborates the unsworn testimony of an infant is "legally sufficient if it tends to establish the crime and that petitioner committed it." *People v. Groff*, 71 N.Y.2d 101, 109, 524 N.Y.S.2d 13, 518 N.E.2d 908 (1987). Petitioner contends that the medical testimony does not establish a crime, since the "funneling" effect could have been made by any number of blunt objects, and further that it does not connect petitioner to the crime in any way. While that analysis is correct, petitioner errs in claiming that the jury was instructed to look exclusively to Dr. Ramirez–

HoJohn's testimony for corroboration of the victim's account of the incident. The jury charge clearly instructed that the jury must look at all the evidence to determine whether there was sufficient corroboration of the victim's testimony. The Court charged that "there has to be other evidence in the case, evidence besides the unsworn testimony of Vincent Barrios, *all* of which evidence, *taken together*, satisfies you beyond a reasonable doubt that petitioner is guilty." Tr. at 714 (emphasis added). The judge went on to remind the jury about the medical evidence put in by the prosecution and the defense effort to discredit that evidence. However, that the judge described certain arguments put forth by the defense counsel and the prosecution does not indicate that those arguments were the only ones that the jury was allowed to consider.

Significant additional evidence was introduced at trial to corroborate Vincent's testimony. Petitioner's statements to the police were introduced as indicative of his consciousness of guilt. The arresting officer testified that petitioner said he had been waiting for the police to come get him for three months (about the length of time that had passed since the crime). The detective also testified that petitioner asked him how much time he was facing because of "this." In addition, Jose Antonio Roman, petitioner's roommate, testified that he saw Vincent and his brother lying naked on petitioner's bed. Finally, the prompt outcry evidence also corroborated Vincent's testimony. Taken in the light most favorable to the prosecution, this testimony links petitioner to the crime.

■ Petitioner additionally argues that prompt outcry testimony has no corroborative value, because it is not truly independent of the victim's testimony. This contention is clearly contrary to New York State precedent. The New York

**268**

Court of Appeals has indeed held that prompt outcry evidence by itself is not sufficient to corroborate an infant's testimony. *People v. Badia*, 163 A.D.2d 4, 558 N.Y.S.2d 500 (1990). However, "while prompt outcry evidence *alone* may not suffice to corroborate the testimony of an unsworn witness, it may be considered by the jury on the issue of corroboration." *People v. Cordero*, 257 A.D.2d 372, 377, 684 N.Y.S.2d 192 (1999) (emphasis added) (distinguishing *Badia*). In this case, the prompt outcries could be considered along with other corroborating evidence, namely petitioner's own statements to the police and the fact that the victim was naked in petitioner's bed on the day of the crime. Prompt outcries can be corroborative if "they occurred within a short time after the criminal incident and predated the victim's unsworn testimony." *Id.* Vincent's statements made at dinner that night satisfy both criteria and may, therefore, be used to corroborate his testimony. Taken altogether, the medical evidence, buttressed by the prompt outcries and petitioner's statements to the police, establish both that a crime had been committed and that petitioner committed it.

Finally, petitioner contends that the victim's testimony was so rambling and incoherent that no rational trier of fact could have found him guilty beyond a reasonable doubt. Vincent's testimony, viewed in the light most favorable to the prosecution, is ample evidence to allow a rational trier of fact to conclude that petitioner had indeed committed sodomy on the victim. Vincent repeatedly identified petitioner as the man who "did that" to him. Vincent also said that petitioner "sucked [his] mouth," that petitioner's "winky" did not taste good, and that petitioner put his "winky" in Vincent's butt. An autism expert then explained some of the abnormalities and inconsistencies in Vincent's testimony. Viewing all of the evidence in the light most favorable to the prosecution, a reasonable jury could have found petitioner guilty of sodomy in the first degree beyond a reasonable doubt.

**Conclusion**

Petitioner fails to show that the state court unreasonably applied the Supreme Court's standard for legally sufficient proof as set forth in *Jackson v. Virginia*, which requires that the prosecution must prove guilt beyond a reasonable doubt. *See* 28 U.S.C. § 2254(d)(1). The infant's testimony was sufficiently corroborated and there was enough evidence for a rational trier of fact to find petitioner guilty under the standard set forth in *Jackson*. No independent constitutional violation has been shown. Therefore, the petition for a writ of habeas corpus is denied. The Clerk of Court is directed to enter judgment for respondent. As petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability is denied.

**SO ORDERED.**